UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                    Case Number: 13-15325-13

     DAVID L. JOHNSON
     and DONNEL D. JOHNSON,

                Debtors.

---

**MEMORANDUM DECISION**

The dispute in this case centers on an apparent conflict between two Bankruptcy Code provisions concerning the redemption period for a land contract and the right to cure a default in a Chapter 13. The Court previously entered an order denying the objection to the claim of Kenneth Shirley and allowing the claim as a secured claim. There remains the pending objection to confirmation that is the subject of this decision. The confirmation objection asserts that the plan may not be confirmed because it fails to provide for "payment of the full amount due and owing to redeem" within the time period set forth in 11 U.S.C. § 108(b)(2).

**JURISDICTION**

The federal district courts have "original and exclusive jurisdiction" over all cases under title 11 ("Bankruptcy Code" or "Code") and "original but not exclusive jurisdiction" over all civil proceedings that arise under the Bankruptcy Code or that arise in or are related to cases under the Code. 28 U.S.C. §§ 1334(a)-(b). The district courts may, however, refer such cases to the

bankruptcy judges within their district. In the Western District of Wisconsin, the district court has made such a reference. *See* Western District of Wisconsin Administrative Order 161 (July 12, 1984). Accordingly, this Court "may hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).

Bankruptcy courts determine whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3). Proceedings concerning the allowance or disallowance of claims against the estate and the confirmation of plans are core proceedings. 28 U.S.C. §§ 157(b)(2)(B), (L). This Court has both the jurisdiction and the constitutional authority to enter a final judgment in this matter.

## FACTS AND PROCEDURAL HISTORY

The Debtors, David and Donnel Johnson, filed a voluntary Chapter 13 petition on October 31, 2013. On March 24, 2014, they filed the pending Amended Plan. Kenneth Shirley filed an amended Proof of Claim 4-3 on April 8, 2014.

At the heart of the dispute between the Debtors and the Shirleys is a land contract that was entered into by the parties on or about November 25, 2009. The purpose of the land contract was to facilitate the purchase of a home in Buffalo City, Wisconsin. The property remains the homestead of the Debtors. The land contract provided for the payment of the principal amount of $139,000 at

6.5% per annum. The land contract called for a $10,000 payment upon execution and subsequent, semi-monthly installments of $450 on the first and fifteenth of each month. The first payment was due January 4, 2010.[1] The land contract matured on December 1, 2010. On the maturity date, the entire outstanding balance of the land contract was due in full.

The land contract also contained provisions governing events of default. The provisions stated that in the event of a default in payments lasting for thirty days, following written notice by the Shirleys, the entire balance of the contract was immediately due and payable. The contract also provided that upon default, the Shirleys had the option to, *inter alia*,[2] terminate the contract and either recover the property through strict foreclosure or have the property sold by foreclosure sale. Under either scenario, the contract provided that a period of redemption was to be set by a court in its discretion, and was to be conditioned on full payment of the entire outstanding balance. The default interest rate was 12% per annum on the entire amount in default, including, upon maturity, the entire principal balance. Finally, the contract provided the Shirleys could "waive any default without waiving any other subsequent or prior default" of the Debtors.

---

[1] The land contract itself states that the term of the contract ran from December 15, 2009; however, an addendum indicates that the parties agreed that the first payment was due on January 4, 2010.

[2] Because the Shirleys ultimately proceeded with a strict foreclosure action, the other options are not relevant here.

Although there seems to be no question that the Debtors made every payment called for prior to maturity, it is also undisputed that the Debtors failed to make the balloon payment that was due on December 1, 2010. Despite failing to make the balloon payment, however, the Debtors continued making most of the monthly payments[3] following the maturity date. There is no dispute the Shirleys accepted these payments.

On or about March 25, 2013, the Shirleys filed an action for strict foreclosure against the Debtors in Buffalo County Circuit Court. They obtained a Judgment of Strict Foreclosure effective May 30, 2013. The Judgment determined that the Shirleys were owed $121,788.75 in principal, $26,221.40 in interest, $2,550 in attorney's fees, and $499.50 in disbursements, for a total of $151,059.65, which accrued interest at a rate of 12% per annum.

The Judgment established a redemption period. The Debtors had the right to redeem the real estate by September 1, 2013, unless they made payments according to a set schedule (and at an interest rate of 12% per annum, which would accrue until redemption took place). If payments were made on schedule, the redemption date would automatically be extended to November 1, 2013. Neither party seems to dispute that the redemption date was ultimately extended

---

[3] The Debtors contend that they continued making post-maturity payments from December 2010 through September 2013 and that the Shirleys accepted every payment. By these calculations, the Debtors have submitted money orders for post-maturity payments totaling $19,500.

4

to November 1. If the Debtors failed to redeem the property, the Judgment provided that the Debtors' interest would be "forever foreclosed."

The Debtors filed bankruptcy on October 31, 2013. The Debtors' Schedule D states the Shirleys' secured claim is $121,000, and the value of the property is $140,000. The Shirleys' amended Proof of Claim 4-3[4] asserts a secured claim of $153,307.29 based on the Judgment of Strict Foreclosure. The Amended Plan proposes to amortize the amount owed to the Shirleys over the sixty-month term of the plan, make monthly payments directly to the Bank of Alma,[5] and pay the entire balance in full at the end of the plan.

The Shirleys argue the sole remedy for the Debtors was redemption by payment in full within the time limits set by section 108(b). For their part, the Debtors argue that section 1322(c) permits them to cure the default on the land contract after the redemption period notwithstanding the language of section 108(b). They argue that section 1322(c) establishes an independent right in Chapter 13 cases to cure a default on a debtor's homestead. In support, they argue that even after the entry of the Judgment of Strict Foreclosure, under Wisconsin law, equitable title remains with a land contract vendee until an order

---

[4] Although amended Proof of Claim 4-3 lists only Kenneth Shirley as a creditor, subsequent pleadings filed by Mr. Shirley's attorney indicate that other individuals, Lloyd L. Shirley, Nancy M. Shirley, and Ruth A. Shirley, are creditors on the same claim. *See, e.g.,* Creditors' Statement of Case, Docket No. 43.

[5] The Amended Plan provides that the payments to the Bank of Alma are to be applied to the bank's mortgage on the property, which the Shirleys granted on July 6, 2009.

is entered confirming the vendee's default following the expiration of the redemption period. Thus, since no confirmation order was entered prior to the petition date, the Debtors' equitable title to the property passed into the bankruptcy estate and the Debtors are permitted to use the provisions of Chapter 13 to cure the default.

## STATEMENT OF LAW

The filing of a bankruptcy petition creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The debtor's interests in property are created and defined by nonbankruptcy law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). As a result, the "rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984).

In Wisconsin, a land contract vendor—here, the Shirleys—holds legal title as security for the unpaid balance of the contract, while the land contract vendee—the Debtors—holds equitable title. *City of Milwaukee v. Greenberg*, 163 Wis. 2d 28, 36-39, 471 N.W.2d 33, 49-50 (Wis. 1991). "Holding equitable title in effect gives the land contract vendee 'full rights' of ownership, including the ability to 'sell, lease or encumber the real estate subject to the rights of the Vendor unless the contract provides to the contrary.'" *Steiner v. Wis. Am. Mut. Ins. Co.*, 2005 WI 72, 281 Wis. 2d 395, 406, 697 N.W.2d 452, 457 (2005). In the event of default, among other remedies, land contract vendors may pursue strict

foreclosure. *Kallenbach v. Lake Publ'ns, Inc.*, 30 Wis. 2d 647, 651, 142 N.W.2d 212, 220 (Wis. 1966). In strict foreclosure proceedings, rather than collect the amount remaining on the debt, the land contract vendor simply recovers the property through a judicial procedure. *Kallenbach*, 30 Wis. 2d at 657, 142 N.W.2d at 232. If the land contract vendee defaults, the circuit court's judgment of strict foreclosure sets a redemption period as set forth in Wis. Stat. § 846.30. The statute provides that:

> If a court finds that the purchaser under a land contract is obligated to make certain payments under that land contract, that the purchaser has failed to make the required payments and that the vendor is entitled to a judgment of strict foreclosure, the court shall set a redemption period of at least 7 working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order. *No judgment of strict foreclosure is final until the court enters an order after the expiration of the redemption period confirming that no redemption has occurred and making the judgment of strict foreclosure absolute.*

Wis. Stat. § 846.30 (emphasis added).

Following the expiration of the redemption period, the default must be confirmed by entry of an order before equitable title revests in the land contract vendor. *Steiner*, 281 Wis. 2d at 420, 697 N.W.2d at 465 ("[W]e hold that under Wis. Stat. § 846.30, equitable title remains with a land contract vendee until a circuit court enters an order pursuant to § 846.30 confirming the land contract vendee's default, following the expiration of the redemption period for strict foreclosure"). Notably, case law in Wisconsin has established that, as a matter of law, the remedy of strict

foreclosure does not involve a sale. *Republic Bank of Chicago v. Lichosyt,* 2007 WI App 150, 303 Wis. 2d 474, 491, 736 N.W.2d 153, 161 (2007) (citing *Kallenbach,* 30 Wis. 2d at 652, 142 N.W.2d 212). Because there was no order confirming the default after the redemption period, equitable title remained with the Debtors on the petition date.

According to 11 U.S.C. § 108(b), if an order entered in a nonbankruptcy proceeding fixes a period within which the debtor may cure a default, after filing bankruptcy the debtor may cure the default before the later of the end of the period set by the order or sixty days after the order for relief. Since the redemption period set by the Judgment of Strict Foreclosure expired on November 1, one day after the petition date, sixty days from the petition date is the later of the two possible dates. Therefore, under section 108(b), the last date by which the Debtors could have cured the default on the land contract was December 31, 2013. To date, they have not done so. The Shirleys argue that because the section 108(b) deadline has lapsed, the Debtors' Amended Plan that proposes to cure the default cannot be confirmed.

By comparison, however, section 1322 permits debtors in Chapter 13 to propose plans that "provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3). Because the ability to cure a default does not constitute a modification of the creditor's interest, the general power to cure defaults under section 1322(b)(3) extends to debts secured by an

8

interest in the debtor's principal residence despite section 1322(b)(2)'s prohibition of the modification of the rights of creditors whose claims are secured solely by interests in the debtor's principal residence. *In re Clark*, 738 F.2d 869, 874 (7th Cir. 1984); *see also Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 644 (4th Cir. 2003).

More specifically, section 1322(b)(5) grants debtors the ability to cure defaults within a "reasonable time." With respect to debts secured by a lien on the debtor's principal residence, section 1322(c)(1) provides that the "reasonable time" to cure the default ends when the residence is sold at a foreclosure sale. Citing these provisions, the Debtors assert that there is an independent right to cure defaults in Chapter 13 notwithstanding the language of section 108(b).

Thus, the central question before the Court is whether the Debtors may be permitted to cure the default on the land contract, or whether section 108(b) extinguished their right to do so on December 31, 2013. Most cases that have analyzed the interplay of section 108(b) and the provisions of section 1322 have done so in the context of mortgages or tax sales, not land contracts. *See, e.g., In re Holmdahl*, 439 B.R. 876 (Bankr. W.D. Wis. 2010); *In re Kasco*, 378 B.R. 207 (Bankr. N.D. Ill. 2007); *In re Snowden*, 345 B.R. 607 (Bankr. N.D. Ill. 2006); *In re Carter*, 312 B.R. 356 (Bankr. N.D. Ill. 2004); *In re Wescott*, 309 B.R. 308 (Bankr. E.D. Wis. 2004); *In re Pellegrino*, 284 B.R. 326 (Bankr. D. Conn. 2002); *In re Brown*,

249 B.R. 193 (Bankr. N.D. Ill. 2000). Moreover, there are no decisions of the Seventh Circuit Court of Appeals that specifically address whether or not the provisions of section 1322 override the plain language of section 108(b).

There is, however, a decision of the Ninth Circuit Bankruptcy Appellate Panel that squarely addresses the question before this Court in the context of land contracts, and its reasoning and holding are persuasive. *Frazer v. Drummond (In re Frazer)*, 377 B.R. 621 (B.A.P. 9th Cir. 2007). In that case, like the case at bar, the debtors had defaulted on the Montana equivalent of a land contract that was secured by a lien on their principal residence. *Id.* at 624. Following the default, pursuant to the terms of the land contract, the vendor accelerated the outstanding balance and required that full payment be made within thirty days. *Id.* at 623-24. The debtors filed bankruptcy under Chapter 13 the day before full payment was due, and then sought to cure the default through a series of Chapter 13 plans. *Id.* at 625. By the time of the confirmation hearing, more than sixty days had passed from the petition date, and the vendor argued the debtors' right to cure had expired pursuant to section 108(b). *Id.* at 625-26.

The bankruptcy court agreed with the vendor and concluded the time period to cure the default was governed by section 108(b), not by the provisions of section 1322. *Id.* at 626. Because the debtors had not cured

the default or obtained confirmation of a plan that cured the default before the sixty-day extension granted by section 108(b), the vendor was granted relief from stay to terminate the land contract. *Id.* On appeal, the B.A.P. reversed the bankruptcy court, concluding the power to cure defaults in Chapter 13 was not limited by the general deadlines established in section 108(b). This Court agrees with both the outcome reached by the B.A.P. and the reasoning employed to reach it.

As an initial matter, section 1322(c)(1) does *not* provide the authority for the Debtors to cure the default. Under Wisconsin law, strict foreclosure proceedings do not contemplate a "foreclosure sale" as that phrase is used in section 1322(c)(1). Instead, strict foreclosures entail a judicial procedure whereby equitable title reverts to the land contract vendor upon confirmation of the judgment of strict foreclosure. Since there is no sale, there is no triggering event that invokes section 1322(c)(1). While section 1322(c)(1) "is intended to enhance a debtor's ability to save his or her home through chapter 13," there is little indication that "Congress contemplated its use in situations where the security device is not subject to a foreclosure sale." *Id.* at 628.

The fact that section 1322(c)(1) does not apply does not mean the Debtors may not cure the default, however, because section 1322(c)(1) is, in effect, simply a limitation on the general power to cure defaults that is granted in section 1322(b). *Id.* The applicable provisions of section 1322(b)

11

permit the Debtors to cure the default within a "reasonable time." *See* 11 U.S.C. §§ 1322(b)(3), (5). Because the power to cure includes the power to remedy a default and restore matters to the pre-default status quo, the Debtors may reinstate the debt and de-accelerate the balloon payment that came due on the maturity date. *Id.*; *see also In re Clark*, 738 F.2d at 872.

    The B.A.P. in *Frazer* also concluded that section 108(b) should not be read to curtail the general power to cure granted to Chapter 13 debtors. *Id.* at 631. Generally speaking, as described in the legislative history, the purpose of Chapter 13 is to support and promote the rehabilitation of financially distressed individuals. *See id.* at 631 (citing *In re Kokkinis*, 22 B.R. 353, 354-55 (Bankr. N.D. Ill. 1982); H.R. Rep. No. 95-595, 95th Cong. (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, 95th Cong. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787). This goal is accomplished, in part, by granting the debtor "the ability to adjust his or her debts through a flexible repayment plan." *Id.* (citing H.R. Rep. No. 95-595, 95th Cong. 118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6079). The provisions that convey this ability are specific to the Chapter 13 context; they grant the debtor powers that are unavailable in other chapters of the Code. *See id.*

    By comparison, section 108(b) is a provision of general applicability. *See id.* at 632. It is well-settled that where two statutes may conflict,

specific provisions prevail over general provisions. *See id.* (citing *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208, 52 S. Ct. 322, 76 L. Ed. 704 (1932)). Accordingly, "the more specific cure provisions of [section] 1322, which govern chapter 13 plans, apply rather than the more general provision of [section] 108(b), which applies in general to bankruptcy cases." *Id.* (citations omitted). In so finding, the B.A.P. held that "the cure provisions of [section] 1322 afford Debtors a reasonable time to cure the default on the Contract . . . . Therefore, Debtors are entitled to cure the default through their plan and reinstate the debt." *Id.* at 632.

There is no reason in the case at bar that the Debtors should not, within a reasonable time, be able to cure the default as proposed in the Amended Plan. *Accord In re Romious*, 487 B.R. 883, 886 (Bankr. N.D. Ill. 2013) (citing *In re Bates*, 270 B.R. 455, 466-67 (Bankr. N.D. Ill. 2001); *In re Kasco*, 378 B.R. 207, 214 (Bankr. N.D. Ill. 2007)); *In re Francis*, 489 B.R. 262, 269 (Bankr. N.D. Ga. 2013).

## CONCLUSION

For the foregoing reasons, the Shirleys' objection to confirmation is OVERRULED.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 8, 2014

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge